## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MAHERSALA HOWARD and LORETTA WASHINGTON, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:23-cv-02012-MLB-JEM |
| CITY OF COLLEGE PARK, GEORGIA, | ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

Plaintiffs' response shows no material factual dispute that requires a jury. Instead, they accuse defense counsel of coaching a witness during a break in a deposition (citing no evidence); challenge the authenticity of audio recordings they themselves produced in discovery; and, for Ms. Howard's claim, lean heavily on alleged hearsay from her therapist and a "tape recording" that is not in the record and was never produced in discovery. Plaintiffs are grasping at straws. The Court should grant the City's motion for summary judgment and dismiss this case with prejudice.

**A.     Ms. Washington presents no material factual dispute to go to a jury.**

**1.     The evidence shows Mercedes Miller decided to terminate Ms. Washington's employment before December 30, 2020.**

Ms. Washington asserts Ms. Miller and Dr. Dwight Baker gave conflicting

accounts over when Ms. Miller made the termination decision. (Doc. 58-1, p. 12.) There

is no conflict. Ms. Miller testified to the exact moment she made the decision:

> Q:    I didn't ask you about the reason. I asked you if you made [the termination decision] while [Ms. Washington] was out sick.
>
> A:    No. That decision was made for me in December.
>
> Q:    Was it while she was out sick?
>
> A:    **No. I made that decision once Ms. Washington wrote the email to me about bullying her** and then her work not being done. I decided then that Ms. Washington and I were not going to work together. Because again, I was not getting the work done. And she didn't really want to work with me. And I was okay with that, but that was before her illness came on.

(Miller Dep., 175:6-18 (emphasis added).)

The email to which she refers is dated December 15, 2020:

> Mercedes,
>
> I will not allow you to bully me again. PLEASE STOP. LEAVE ME ALONE.
>
> Regards, Loretta

(Washington Dep., Ex. 26; Miller Dep., Def.'s Ex. 1.)

In an attempt to create a factual dispute, Ms. Washington argues that Ms. Miller

"contradicts Baker" about the purpose of the meeting they attempted to schedule with her

on December 30, 2020 because Ms. Miller also testified she wanted to discuss Ms.

Washington's job performance and "issues in the engineering department." (Doc. 58-1, pp. 12, 14.) Where is the contradiction? Job performance and issues in the engineering department are why Ms. Miller decided to end Ms. Washington's employment. As Ms. Washington acknowledges, Ms. Miller already had asked Dr. Baker about the process for terminating Ms. Washington (*Id.*, pp. 11-12), and even Ms. Washington believed the meeting was to terminate her employment. (*See* Washington Dep., Ex. 43 ("I honestly feel like she is about to fire me.").) Everyone involved understood Ms. Washington's employment was going to end at this meeting.[1]

Ms. Washington's other arguments fare no better. She points out Ms. Miller did not document in writing the exact timing of the termination decision or issue any formal written disciplinary actions. (Doc. 58-1, pp. 12-13.) But nothing in the record suggests any such writings are required before terminating an employee. Ms. Washington does *not* dispute the underlying performance issues that led to Ms. Miller's decision, including the multiple complaints from developers about Ms. Washington's slow processing of their requests and heated clashes with multiple city officials, including the mayor, about a city engineer's role and the tone of her public interactions. (*See* Doc. 58-3, ¶¶ 56-84.)

There is no genuine dispute over when Ms. Miller decided to terminate

---

[1] Ms. Washington's baseless accusations of witness coaching deserve no more discussion than what already is in the City's response to No. 11 of plaintiffs' statement of additional material facts. If Ms. Washington truly suspected Dr. Baker had received coaching during a break in his deposition, her counsel could have asked Dr. Baker under oath if this had occurred, but he did not. No coaching took place, and no evidence suggests it did.

Ms. Washington's employment. That she made this decision before Ms. Washington sent her December 30, 2020 email requesting medical leave and advising of her earlier complaint about Jackson Myers is dispositive of all her claims. Because Ms. Miller made this decision *before* the December 30 email, the decision could not possibly have been in response to the email. (*See also* Doc. 54-2, pp. 19-21.) For this reason alone, the City is entitled to summary judgment on all of Ms. Washington's claims.

> **2.    Ms. Washington does not dispute that the EEOC did not investigate a disability discrimination claim.**

Ms. Washington acknowledges the EEOC did not investigate an ADA claim but blames "the EEOC's failure to comprehend" her charge of discrimination. (Doc. 58-1, p. 8.) Nevertheless, she insists an ADA investigation could reasonably have been expected from her charge, despite the fact that the EEOC did not read it that way. (*Id.*)

Her assertion that this Court should not consider "what the EEOC did and did not investigate" runs directly counter to the authority cited in the City's initial brief, which Ms. Washington does not even attempt to distinguish. (*Id.*, pp. 5-8.) *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) ("[I]t is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation."); *Nye v. Alloy Wheel Repair Specialists, LLC*, No. 1:18-CV-5622-SCJ-JKL, 2019 WL 13275565, at \*12 (N.D. Ga. Apr. 15, 2019) ("[C]ourts should consider the scope of the *actual* investigation conducted by the EEOC in determining the permissible scope of a judicial complaint[.]"), *adopted*,

No. 1:18-CV-05622-JPB, 2020 WL 13663562 (N.D. Ga. Feb. 21, 2020).[2]

Ms. Washington's response ignores these cases, presumably because she has no rebuttal. The Court thus also should hold she failed to exhaust administrative remedies for an ADA claim.

### 3. Ms. Washington admits she cannot prove a *prima facie* case of Title VII retaliation.

Because Ms. Washington admits her internal complaint about Mr. Myers "does not implicate behavior this circuit would regard as probative of a sex-based hostile environment" (Doc. 58-1, pp. 22-23), her Title VII retaliation claim necessarily fails for lack of statutorily protected activity. Her assertions regarding what she "perceived" go only to the subjective component of the protected activity analysis. But since controlling legal authority holds the substance of her complaint insufficient for stating a hostile work environment, as she admits, she cannot show her subjective perception was objectively reasonable. (*See* Doc. 54-2, pp. 15-16.)

Ms. Washington's assertion in a footnote that the Court should apply the "well might have dissuaded" standard applicable to retaliation claims (instead of "severe and pervasive") misses the point of the objective reasonableness analysis. (*See* Doc. 58-1, p. 24 n.7.) As the authority in the City's initial brief shows, it is the original underlying

---

[2] *See also Smith v. Sentry Ins.*, 674 F. Supp. 1459, 1467 (N.D. Ga. 1987) ("[T]his court considers the actual investigation triggered by the EEOC charge to be the primary factor determining the permissible scope of a judicial complaint of employment discrimination.").

complaint (the complaint for which she allegedly is experiencing retaliation) that must be objectively reasonable in light of controlling authority. (Doc. 54-2, pp. 15-16.) Because she contends she experienced retaliation for complaining about a sexually hostile environment, she must show she had an objectively reasonable belief she was opposing such an environment, which among other things requires severe or pervasive harassment. (*Id.*) That she admits she cannot do this is another reason for granting the City's motion for summary judgment as to this claim.[3]

**B.    Ms. Howard raises no triable issue of material fact.**

Ms. Howard's disability discrimination claim is based almost entirely on vague statements ("something is going on with you" and/or "something is wrong with you"), the unknown contents of a phantom "tape recording" that is not in the record, and alleged hearsay from her therapist—altogether insufficient for proceeding past summary judgment. (Doc. 58-1, pp. 16-20.)

**1.    Ms. Howard has no evidence the City referred her to EAP for mental health reasons.**

Assuming for purposes of this motion that the above-quoted comments were

---

[3] Ms. Washington also asserts that Ms. Miller effectively "confessed a potential retaliatory motive" in saying in her deposition "when you mis-accuse me, I assume that you're mis-accusing everybody." (Doc. 58-1, p. 25.) To the extent Ms. Washington intends this to be an assertion of direct evidence of retaliation, it comes nowhere close. "Direct evidence is evidence[] that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aero., Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (cleaned up). One obviously would need multiple inferences and/or presumptions to read Ms. Miller's above quote as professing an intent to retaliate.

uttered ("something is going on with you" and/or "something is wrong with you"), nothing suggests they had anything to do with Ms. Howard's alleged disabilities. As she alleges, these comments arose in the context of the Employee Assistance Program ("EAP") referral; she wants the Court to *assume* the EAP referral was for her alleged anxiety and depression. (*Id.*, p. 18.)

But the record evidence is to the contrary. The EAP referral form and letter of reprimand that preceded it make clear Ms. Howard's referral was for "[w]ork related" and "workplace issues," including "to manage workplace conflicts and work dynamics," and *not* for anxiety, depression, or any other mental health reason. (*See* Howard Dep., Exs. 17, 20.) All the mental health boxes are left unchecked. (*Id.*, Ex. 20.) Her therapist's notations on the form reinforce this understanding, noting "[i]t appears there may be a personality conflict that resides with [Ms. Harrison]," "[Ms. Howard] is not in need of any further treatment," and she had "[n]o recommendations for [Ms. Howard]." (*Id.*)

In addition to the EAP referral form itself contemplating a variety of "[p]resenting [p]roblem(s)" unrelated to mental health (such as domestic violence, family issues, marital/relationships, and parenting), Dr. Baker testified he has previously referred employees to EAP for work-related performance issues. (Baker Dep., 149:11-14; Howard Dep., 135:13-16.) Ms. Harrison herself testified she also has used the City's EAP program for work-related reasons, unrelated to mental health. (Harrison Dep., 65:25-66:7.) Even Ms. Howard acknowledged she was not sure if the alleged phrase "something

-7-

is going on with you" did not mean something was going on with her work-wise. (Howard Dep., 133:23-134:3.)

Ms. Howard's only response to the above points is that they "do[] not square with the evidence that Howard described her depression and anxiety during the taped session that Baker listened to." (Doc. 58-1, p. 19 n.5.) This alleged "tape recording," however, is not in the record before this Court, so any representations she makes about its contents are inadmissible under the best evidence rule. Fed. R. Evid. 1002; *Benjamin v. Thomas*, 766 F. App'x 834, 837 (11th Cir. 2019). Ms. Howard produced seven audio recordings in this litigation, but the alleged recording of a therapy session is not one of them. In fact, *none* of the audio recordings Ms. Howard produced makes any mention of a disabling mental condition.[4] (*See* Howard Dep., 148:9-155:18 & Exs. 33, 34, 35, 36, 37, 38, & 39.) In any event, Ms. Howard *admits* Dr. Baker did not understand the EAP referral for Ms. Howard to be for psychological counseling, so whatever point she attempted to make by reference to this phantom "tape recording" is moot. (*See* Doc. 58-3, ¶ 21.)

Similarly, the alleged statements Ms. Howard attributes to her therapist (Terry

---

[4] It is rich that Ms. Howard challenges the authenticity of the audio recordings she herself produced in discovery (*see* Doc. 58-3, ¶ 38), while simultaneously asking this Court to accept at face value her representations of the contents of a "tape recording" she allegedly made but which does not exist in the record and never was produced in discovery. It is well-settled law that a party may not challenge the authenticity of documents she herself produced in discovery because "[s]uch documents are deemed authentic when offered by a party opponent." *Sklar v. Clough*, No. 1:06-CV-0627-JOF, 2007 WL 2049698, at *4 (N.D. Ga. July 6, 2007).

Jackson) are textbook hearsay, as even she acknowledges, and also inadmissible. (*See* Doc. 58-1, p. 16 n.4.) "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012). While Ms. Howard argues *Jones* permits an exception to this rule if the hearsay statement is capable of being reduced to an admissible form at trial, this in no way suggests parties have free rein to rely on hearsay at the summary judgment stage on the mere promise that the declarant will testify at trial. To the contrary, the Eleventh Circuit has explained that "the out-of-court statement made to the witness . . . must be admissible at trial for some purpose." *Macuba v. Deboer*, 193 F.3d 1316, 1323-24 (11th Cir. 1999). "For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence)." *Id.* (footnotes omitted). Ms. Howard has not shown that any of these exceptions apply.

Ms. Howard's point that she listed her therapist as a witness in her initial disclosures makes her reliance on hearsay worse, not better. (*See* Doc. 58-1, p. 16 n.4.) Since her therapist is one of her own witnesses, she could have submitted an affidavit or declaration by the therapist for any statements she wanted the court to consider. Ms. Howard offers no explanation for why she did not submit an affidavit or declaration, and she cites no authority for the proposition that a court should consider on a summary

judgment motion hearsay from a witness who has been listed on a plaintiff's initial disclosures since the onset of discovery (in this case, since May 2024 (*see* Doc. 23)).

Thus, because there is no genuine dispute that the City's referring Ms. Howard to EAP was for work-related reasons and not for mental health treatment, Ms. Howard's reliance on the EAP referral as evidence of disability discrimination falls flat.

### 2. Ms. Howard's "me too" theory is flawed.

In another grasping at straws, Ms. Howard makes a "me too" argument based on Ms. Washington's claims, essentially arguing that her own claim should survive summary judgment because Ms. Washington also claims to have experienced disability discrimination. (Doc. 58-1, pp. 19-20.)

This is not a "me too" case. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008), on which Ms. Howard relies, held "me too" evidence, in some cases, may be admissible under Federal Rule of Evidence 404(b) to prove the employer's intent to discriminate and retaliate. But *Goldsmith* involved a plaintiff who alleged he and two other coworkers all lost their jobs after individually reporting the same supervisor's racial slurs. *Id.* at 1272-73. The Eleventh Circuit held that, because the plaintiff and his coworkers "were discriminated against by the same supervisor," the coworkers' experiences were "probative of [the supervisor's] intent to discriminate." *Id.* at 1286.

Ms. Howard's circumstances are not remotely like the plaintiff's in *Goldsmith*. She and Ms. Washington did not report to the same supervisor, perform the same job, or

even work in the same department. Their terminations/resignations were not close in time, as Ms. Washington's employment ended in January 2021, while Ms. Howard's termination occurred nearly two years later in October 2022. Most importantly, the decisionmakers for each termination were different. Ms. Miller made the decision to end Ms. Washington's employment, while Ms. Harrison was the decisionmaker for Ms. Howard's termination. Whether or not Ms. Miller harbored an anti-disability animus is not at all probative of whether Ms. Harrison did. The only overlap is that Dr. Baker was the City's HR director during (part of) both employments, but this is not a salient fact because the record is clear he was not the decisionmaker for either termination.

The Court thus should reject Ms. Howard's "me too" theory because her employment with the City was utterly unrelated and not similarly situated to Ms. Washington's. *See Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1258 (11th Cir. 2014) (district court did not abuse discretion in excluding "me too" evidence that was unrelated to plaintiffs' supervisors); *Lewis v. Dep't of Transp.*, 187 F. App'x 961, 961-62 (11th Cir. 2006) (finding no error in excluding "me too" evidence that involved different decisionmakers where "evidence was likely to confuse the issues for the jury and unfairly prejudice the defendants").

### 3.    The ADA does not permit mixed-motive claims.

Finally, Ms. Howard argues she has created a triable issue as to "whether her mental health was a negative factor that motivated her termination." (Doc. 58-1, p. 21.)

Even if she had (which she has not), the ADA does not provide for mixed-motive or motivating-factor claims. Ms. Howard instead must prove her alleged disabilities were the "but for" cause of her termination, meaning she would not have been terminated without them. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1200 (11th Cir. 2024).

Ms. Howard has no evidence any disabling mental condition was a "but for" cause for her termination. As the City showed in its initial brief, Ms. Harrison terminated Ms. Howard's employment after multiple one-on-one counselings and an EAP referral for strategies on managing workplace conflicts and dynamics failed to result in significant and consistent improvement from Ms. Howard. (*See* Doc. 54-2, pp. 6-7.) The workplace conflicts at issue included behaviors such as rolling her eyes at Ms. Harrison, slamming down her keys, saying to Ms. Harrison, "That's not my job," and refusing to sign multiple written counseling forms. (*Id.*, pp. 5-6.) Even Ms. Howard's therapist found there was "a personality conflict" with Ms. Harrison.

Because the ADA does not provide for mixed-motive claims, Ms. Howard must show the above concerns were both false and that Ms. Howard's alleged disabilities were the real reasons for her termination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.").

Ms. Howard cannot possibly show the above concerns were false because she acknowledges "Harrison and Baker may have genuinely believed that Howard was not

effective at her job." (Doc. 58-1, p. 21.) An employer's good faith belief that an employee is ineffective in her job (even if mistaken), by definition, cannot be pretext for discrimination. *See EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176-77 (11th Cir. 2000) (holding that the appropriate inquiry in determining whether an employer's reason for terminating the plaintiff is pretext is whether the employer terminated the employee based on a "good faith belief" that the employee had done wrong, not whether the wrong actually was committed); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998) ("[T]he heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons."); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that inquiry is not whether employee was guilty of misconduct but whether employer in good faith believed employee had done wrong and whether this belief was the reason for the termination).

To the extent Ms. Howard intended to argue her alleged disabilities were what caused her to exhibit the combative and insubordinate behavior that ended in her termination, no evidence in the record suggests depressive disorder or acute anxiety is related to behavior like rolling her eyes, slamming her keys, saying "That's not my job," blaming Ms. Harrison herself for tasks left undone, and refusing to sign counseling forms. Nor did Ms. Howard bring up these alleged mental conditions or how they may have affected her workplace behavior in her written responses to discipline or in any of the

multiple recordings she made of meetings in the workplace.

**C.    Neither plaintiff lays a "convincing mosaic" of discrimination or retaliation.**

Plaintiffs also make passing reference to the "convincing mosaic" line of cases, but neither plaintiff makes clear why those cases would apply here. (Doc. 58-1, pp. 4, 15, 22.) In an abundance of caution, the City addresses that phrase here.

"The 'convincing mosaic' is not a legal test of any kind." *McCreight v. AuburnBank*, 117 F.4th 1322, 1336 (11th Cir. 2024) (cleaned up). The poetic nature of the phrase has resulted in some confusion among litigants, but it is just a metaphor for "the ordinary summary judgment standard." *Id.* It is "a metaphor, not a legal test and not a framework." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). The phrase "was designed as a metaphor to illustrate why courts should not try to differentiate between direct and indirect evidence." *Williams v. Hous. Opportunities for Persons with Exceptionalities*, 777 F. App'x 451, 454 (11th Cir. 2019) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016)).

Neither plaintiff articulates why they believe the record shows a "convincing mosaic," but the facts of this case are not at all like the facts where courts use that phrase. For example, *Lewis v. City of Union City, Ga.*, 934 F.3d 1169 (11th Cir. 2019), which plaintiffs cite, addressed "ample evidence" of pretext in an employer's "extraordinarily arbitrary" treatment of an employee, which included strictly enforcing multiple deadlines of which it gave her no notice; placing her on indefinite administrative leave and then

terminating her a week later, without warning, for being absent without leave; and treating numerous coworkers outside her protected class more favorably in multiple scenarios. *Id.* at 1185-89. *Banks v. MarketSource, Inc.*, No. 1:18-CV-02235-WMR, 2020 WL 6291422 (N.D. Ga. Mar. 20, 2020), which presented a race discrimination claim, discussed a supervisor who disciplined white employees less severely than the Black plaintiff, turned his back to the plaintiff and spoke only to the white employees, asked her to leave the door open when she entered because "now it smells foul in here," and asked her if she had any rats or roaches in her home. *Id.* at *7.

Nothing remotely similar is at issue here. By merely bringing up the phrase "convincing mosaic" but making no argument why it should apply, plaintiffs "failed to assemble any type of mosaic, let alone a convincing one." *Mitchell v. Pilgrim's Pride Corp.*, 817 F. App'x 701, 710 (11th Cir. 2020).[5]

\* \* \*

For these reasons and those discussed in the City's initial brief, the City's motion for summary judgment should be granted and this action dismissed with prejudice.

---

[5] *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939 (11th Cir. 2023), which plaintiffs also cite, is inapposite and concerned an employer's renewed motion for judgment as a matter of law after a jury returned a verdict for the plaintiff. *Id.* at 943. The court discussed "convincing mosaic" in the context of explaining why an employer may not revisit whether the plaintiff established a *prima facie* case after a full trial on the merits—obviously not at issue here. *Id.* at 946-47. The other "convincing mosaic" cases plaintiffs cite ruled in favor of the employers and thus support the City's position. *See Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325 (11th Cir. 2024); *Akridge*, 93 F.4th at 1197; *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329 (11th Cir. 2023).

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486
Kelli N. Spearman
Georgia Bar No. 187882

*Counsel for Defendant*

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339
T:  (770) 818-0000
F:  (770) 937-9960
E:  mhill@fmglaw.com
E:  kelli.spearman@fmglaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY**

**JUDGMENT** has been prepared in compliance with Local Rule 5.1(B) in 14-point

Times New Roman type face.

This 18th day of February, 2025.

FREEMAN MATHIS & GARY, LLP

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486